IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01336-PSF-BNB

SHARON BETHEL, Individually and as Conservator and Guardian of
DAVID BETHEL, an incapacitated person,

    Plaintiff,

v.

UNITED STATES OF AMERICA, by and through
VETERANS ADMINISTRATIVE MEDICAL CENTER OF DENVER, COLORADO;
ROBIN SLOVER, M.D.;
JOHN DOE 1, whose true name is unknown; and
JOHN DOE 2, whose true name is unknown,

    Defendants.

## ORDER ON PENDING MOTIONS

This matter is before the Court on Defendant Robin Slover's First Motion to Dismiss for Lack of Jurisdiction (Dkt. # 22), filed September 28, 2005 and fully briefed as of June 30, 2006. The Court held a hearing on the motion on Tuesday, September 26, 2006. Also pending is Plaintiff Sharon Bethel's Objections to Magistrate Judge's Order Regarding Plaintiff's Discovery Pertaining to Defendant Slover's Motion to Dismiss (Dkt. # 76), filed June 16, 2006.

## I. BACKGROUND

This case arises out of injuries allegedly suffered by David Bethel while a patient at the Veteran's Administration Medical Center ("VAMC") in Denver, Colorado on September 10, 2003. Mr. Bethel was to undergo an elective surgical procedure called

an anal fistulectomy. Defendant Robin Slover was the attending anesthesiologist that day. According to plaintiff, after Mr. Bethel was administered two milligrams of Versed, Dr. Slover left the operating room. Mr. Bethel then became agitated and experienced obvious trouble breathing. Dr. Slover was paged, and she and a resident anesthesiologist tried to sedate Mr. Bethel with intravenous sedatives, and attempted to put an endotracheal tube in Mr. Bethel, which they were unable to do. Mr. Bethel was apparently not getting oxygen during this time and he did not have a detectable pulse. His condition deteriorated and eventually an emergency tracheotomy was performed. During the multiple failed attempts to intubate Mr. Bethel, he apparently suffered cardiac arrest and significant hypoxia resulting in significant brain damage.

At the time of these events, Dr. Slover was an associate professor at the University of Colorado. Her professorship included both teaching and the practice of medicine. *See* Letter of Appointment, admitted as Def.'s Ex. A at the hearing (memorializing Dr. Slover's faculty appointment and describing her responsibilities as including providing anesthesia care within the VAMC operating room). Dr. Slover worked at the VAMC pursuant to an agreement between the University and the VAMC. The agreement provides for 4.32 full-time employee equivalent anesthesiologists for the Denver VAMC for a total contract price. *See* VAMC Anesthesiology Services Contract ("VAMC Contract") at 2, attached as Ex. C to Def.'s Reply.

Sharon Bethel, individually and as guardian of David Bethel, brought suit against the VAMC and against Dr. Slover for negligence on July 15, 2005. Dr. Slover filed a motion to dismiss pursuant to F.R.Civ.P. 12(b)(1) on September 28, 2005 (Dkt. # 22),

contending that she is entitled to a dismissal as a matter of law because Ms. Bethel did not give governmental notice of their claim as required by the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-109, and therefore this Court lacks jurisdiction over plaintiff's claim against her. Dr. Slover contends that she was a state public employee of the University of Colorado and therefore the immunity waiver provisions of the CGIA apply to her. Ms. Bethel contends that Dr. Slover was a federal employee for purposes of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).

## II. STANDARD OF REVIEW

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994), *cert. denied*, 514 U.S. 1109 (1995). Rule 12(b)(1) of the Federal Rules of Civil Procedure empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclus[ory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing federal subject matter jurisdiction is on the party asserting it. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party "make[s] a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction . . . the district court must accept the complaint's factual allegations as true." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)

(internal citation omitted).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *Id.*  A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56.  *Id.*  The instant motion is the latter; Dr. Slover has attacked the factual assertion that she is a federal employee and has attached affidavits and other documents to show that jurisdiction is lacking.

## III.  ANALYSIS

The evidence presented shows that no timely notice as required under the CGIA was given.  *See generally* Def.'s Mot. Dis. (attached affidavits contending notice not received); Pl.'s Resp. (not refuting defendant's contention).  Thus the dispositive issue is whether Dr. Slover can be considered a federal employee for possible FTCA liability during the events in question.  Such a determination–whether one is an employee of the United States–is to be determined by federal law.  *Lurch v. United States*, 719 F.2d 333, 337 (10th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984).

The FTCA operates as a consent to suits against the United States for certain torts committed by federal employees acting within the scope of their employment.  *Woodruff v. Covington*, 389 F.3d 1117, 1125 (10th Cir. 2004).  This consent to suit "does not extend to acts of independent contractors or their employees." *Bird v. United States*, 949 F.2d 1079, 1080 (10th Cir. 1991).  Many Tenth Circuit cases have evaluated in what circumstances a physician practicing at a Veterans Administration hospital was an employee of the United States versus an independent contractor in the

context of a medical malpractice suit such as this one.  *See e.g. Tsosie v. United States*, 452 F.3d 1161 (10th Cir. 2006); *Woodruff*, 289 F.3d 1117; *Lilly v. Fieldstone*, 876 F.2d 857 (10th Cir. 1989).

In *Tsosie*, the Tenth Circuit noted that the "critical question in determining whether an individual is a federal employee or an independent contractor for purposes of the FTCA is whether the federal government has the power to control the detailed physical performance of the individual." 452 F.3d at 1163 (internal quotation marks omitted).  This control test in the context of physicians, who by nature of their occupation must have some discretion to care for a patient and who do not surrender control over certain medical details, requires consideration of a number of factors:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

*Id*. at 1163-64 (citing *Lilly*, 876 F.2d at 859).

Here, a review of the documents memorializing the agreement between the VAMC and the University of Colorado clearly show that the intent of the government and the university was to establish an independent contractor relationship.  *See* VAMC Contract at 15, attached as Ex. C to Def.'s Reply ("It is expressly agreed and understood that this is a non-personal services contract . . . under which the professional services rendered by the Contractor or its health-care providers are rendered in its capacity as an independent contractor."); *Tsosie*, 452 F.3d at 1164

(citing same language and concluding that factor one favored independent contractor status).

As to the second *Lilly* factor, control by the United States, again the situation in the instant case is very similar to the situation is *Tsosie*. Here, the contractual language states that "[t]he Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments." VAMC Contract at 15-16; *see also Tsosie*, 452 F.3d at 1164 (citing identical language in concluding that "the second *Lilly* factor for [the defendant doctor] being an independent contractor is met").

Plaintiff argues that other VAMC rules and regulations suggest that the VAMC actually very closely controlled the performance of Dr. Slover and others. Specifically, Ms. Bethel offers two documents, Department Staffing and Rules of the Medical Staff, that provide detailed procedures that anesthesiologists such as Dr. Slover are to follow. Pl.'s Exs. 2 and 3, admitted at the hearing. However, plaintiff offers no legal basis for why such documents supplant or displace the operative contract between the VAMC and the University, which as noted above contains language identical to that found dispositive for this factor in *Tsosie*. Further, the documents do not necessarily refute the contractual language that the VAMC "may evaluate the quality of professional and administrative services provided but retains no control over . . . professional medical judgment, diagnosis, or specific medical treatments." VAMC Contract at 15-16. The

Court finds that it is bound by controlling Tenth Circuit case law on this factor citing identical contractual language and that it favors independent contractor status here.

The third factor here favors employee status in that Dr. Slover does not use her own equipment but rather that of the VAMC. However, the Tenth Circuit holds that such a determination on this factor is "unremarkabl[e]" in today's world where a physician, either an independent contractor or an employee, "no longer is likely to carry all relevant medical instruments in a black satchel. Instead, it is expected that he will make full use of the hospital's physical facilities during the course of his service." *Tsosie*, 452 F.3d at 1164.

As to factor four, the University provides liability insurance, supporting an independent contractor determination. Under the terms of the contract, "[t]he Contractor and its health-care providers shall be liable for their liability-producing acts or omissions. The Contractor shall maintain or require all health-care providers performing under this contract to maintain, during the term of this contract, professional liability insurance . . . in accordance with the Colorado Governmental Immunity Act." VAMC Contract at 16. Ms. Bethel contends that perhaps an exclusion of coverage exists for "claims or suits arising out of acts or omissions of an individual while self-employed or while employed by an entity other than the University or University Hospital." Pl.'s Resp. at 21 (quoting Updated Risk Management Trust at 9, attached as Ex. F to Pl's Resp.). However, Dr. Slover at the time of the incident in question was undisputedly employed by the University as an associate professor, Pl.'s Resp. at 5, and therefore the exclusion does not appear to apply here. This factor supports a

determination that Dr. Slover was acting in the capacity of employee of an independent contractor and not of the United States.

For the fifth factor, it is undisputed that the University pays social security taxes as to Dr. Slover. Pl.'s Resp. at 21; *see also* VAMC Contract at 7 ("the contractor shall provide . . . worker's compensation, professional liability insurance, health examinations, income tax withholding and social security payments. The parties agree that Contractor personnel without formal VA appointments shall not be considered VA employees for any purpose and shall be considered employees of the contractor."). However, Ms. Bethel contends that statements on behalf of Dr. Slover as to such contractual arrangements are "somewhat misleading" because the VAMC "paid the University of Colorado directly pursuant to the Anesthesiology Contract" and thus never had "the opportunity to pay Dr. Slover directly for her services." Pl.'s Resp. at 21-22. A review of Tenth Circuit case law does not reveal any circumstances where such an "opportunity" is necessary in evaluating this factor, and indeed such an "opportunity" is irrelevant. The payment of social security taxes, and the direct payment of a salary, evidences an intent by the University of Colorado to operate as Dr. Slover's employer and an intent by the VAMC and the University to structure their relationship–in both form and substance–as an independent contractor relationship. Thus, factor five also supports a finding of independent contractor status.

In discussing factor six, whether federal employees are prohibited from performing the contract, plaintiff does not argue that they are so prohibited. Rather she begs the question by asserting that "as an attending physician at the VA, Dr. Slover has

responsibilities with respect to the supervision of residents and anesthesiology staff, which is critical to the function and level of patient care provided at the VA." Pl.'s Resp. at 23.  As there is no evidence that federal employees are so prohibited, the Court concludes that this factor weighs in Dr. Slover's favor.  *See also Tsosie*, 452 F.3d at 1164 (plaintiff did not argue any such prohibition and the Court found none, therefore the factor favored the government).

Ms. Bethel admits that Dr. Slover can meet the final factor, the right to subcontract to others.  Pl.'s Resp. at 23 (admitting that Dr. Slover can trade procedures with someone but noting that such a trade may only be with a physician also credentialed by the VAMC).  Such a limitation on the right to subcontract–requiring that they also be properly credentialed–does not defeat application of this factor in favor of independent contractor status.   Rather, it is clear that the VAMC does not view its arrangement with the University as a personal services contract but rather as an independent contractor arrangement with someone qualified to perform such services.

Under a similar analysis of the *Lilly* factors, the Tenth Circuit in *Tsosie* found that the doctor in question was not an employee of the federal government but rather an independent contractor falling within the FTCA's exception.  452 F.3d at 1165 ("Given that the *Lilly* factors point in favor of independent contractor status, we conclude that [the doctor] was an independent contractor.").  Just as in *Tsosie*, the operable contract here "did not contain mere form 'recitations' attempting to create an independent contractor relationship, but rather was carefully drafted to ensure that all hallmarks of such a relationship were present." *Id.*  The Court finds *Tsosie* controlling, and that Dr.

Slover is an independent contractor for purposes of the FTCA. Further, plaintiff's failure to comply with the CGIA requires Dr. Slover's dismissal as a matter of law. *See* C.R.S. § 24-10-109.

Ms. Bethel also argues that pursuant to the doctrine of dual employment, Dr. Slover can simultaneously be an employee of CU and an employee of the VAMC. Pl.'s Resp. at 23-24 (citing RESTATEMENT (SECOND) OF AGENCY, § 227 (1958) and various Colorado state court cases). However, application of federal law to the facts here as required by the FTCA, *see Lurch*, 719 F.2d at 337, does not allow for such a holding here. Therefore, regardless of Dr. Slover's possible status as a dual employee or a "loaned servant" under Colorado law, under federal law she does not meet the *Lilly* factors to be considered a federal employee for purposes of the FTCA.

## IV. PLAINTIFF'S OBJECTION TO MAGISTRATE ORDER

Ms. Bethel objects to the Magistrate Judge's Order of May 30, 2006. In that Order, the Magistrate Judge denied plaintiff's request to shorten the response time to her second set of discovery. Plaintiff contends that she needed the opportunity to obtain relevant information necessary for her to adequately respond to the motion to dismiss.

Magistrate judges are authorized to hear and determine any nondispositive pretrial matter referred to them. *See* F.R.Civ.P. 72(a), 28 U.S.C. § 636(b)(1)(A). Review of a magistrate judge's rulings on a nondispositive motion, such as the discovery motion at issue here, is subject to the "clearly erroneous or contrary to law" standard. *Clark v. Poulton*, 963 F.2d 1361, 1363 (10th Cir.), *cert. denied*, 506 U.S.

1014 (1992); *Smith v. Colorado Interstate Gas Co.*, 794 F. Supp. 1035, 1040 (D. Colo. 1992). An order is "clearly erroneous" when the reviewing court, after evaluating the entirety of the evidence, is left with the definite and firm conviction that a mistake has been made. *See Cook v. Rockwell Int'l Corp.,* 147 F.R.D. 237, 243 (D. Colo. 1993) quoting *Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572, 580 (10th Cir. 1990) and *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1536 (10th Cir. 1990).

After reviewing the evidence here, the Court cannot say that a mistake has been made. Plaintiff had months for discovery on the motion to dismiss and twice received extensions from the Magistrate Judge to extend discovery deadlines and to extend her deadline for responding to Dr. Slover's motion to dismiss. Further, plaintiff did not seek leave to file a surreply after the discovery was presumably complete, nor did she seek to file a supplement or amendment to her response to the motion to dismiss or any time prior to the hearing before the undersigned on September 26, 2006. See D.C.COLO.LCivR 7.1(E) ("If the matter is set for hearing, supplemental authority must be filed at least five days before the hearing."). Finally, plaintiff did not allege any missing discovery or prejudice during the hearing. Both sides in their briefings and at the hearing presented significant evidence in support of their respective positions and nothing in the briefs or at the hearing indicate any gaps or omissions as to the relationship between a federal and a state entity. There is no basis for finding that the Magistrate Judge's discretionary decision was clearly erroneous, and the Court thus overrules plaintiff's objection.

## V.  CONCLUSION

For the foregoing reasons, Defendant Robin Slover's Motion to Dismiss for Lack of Jurisdiction (Dkt. # 22) is GRANTED.  Plaintiff Sharon Bethel's Objections to Magistrate Judge's Order (Dkt. # 76) is OVERRULED.  It is FURTHER ORDERED that a status conference is set for **Wednesday, October 25, 2006 at 9:30 a.m.** to address remaining issues, including scheduling.

Dated: September 28, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Court Judge