IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01336-PSF-KLM

SHARON BETHEL, individually and as Conservator and Guardian of
DAVID BETHEL, an incapacitated person,

    Plaintiff(s),

v.

UNITED STATES OF AMERICA, by and through
VETERANS ADMINISTRATION MEDICAL CENTER of Denver, Colorado,

    Defendant(s).
_____

## ORDER
_____

**ORDER ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on:

(1) **Plaintiffs' Motion to Amend Scheduling Order and for Leave to Depose Martin London, M.D. and As-Yet Unidentified Witnesses** [Docket No. 293; filed November 9, 2007]; and

(2) **Plaintiffs' Motion to Compel** [Docket No. 296; filed November 9, 2007].

The Court has reviewed the Motions, the pleadings, the exhibits, the case file and the relevant case law and is sufficiently advised in the premises. Accordingly,

IT IS HEREBY ORDERED that **Plaintiffs' Motion to Amend Scheduling Order and for Leave to Depose Martin London, M.D. and As-Yet Unidentified Witnesses**

1

[Docket No. 293; filed November 9, 2007] is **GRANTED IN PART** and **DENIED IN PART,** as set forth below.

IT IS FURTHER ORDERED that **Plaintiffs' Motion to Compel** [Docket No. 296; filed November 9, 2007] is **GRANTED IN PART** and **DENIED IN PART**, as set forth below.

**I.     Statement of the Case**

This is an action for damages pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, arising out of injuries suffered by Plaintiff David Bethel while undergoing surgery at the Veterans Administration Medical Center in Denver, Colorado, on September 10, 2003.

**II.    Motion to Amend Scheduling Order**

Plaintiffs move this Court to amend the Scheduling Order [Docket No. 118]. As a preliminary matter, Plaintiffs and Defendant disagree on whether they satisfied the obligation to confer pursuant to D.C. Colo.L.Civ.R. 7.1 prior to filing of the Motion to Amend. Plaintiffs state "Defendant failed to respond to Plaintiffs' attempt to confer . . . ." *Reply in Support of Motion to Amend*, p. 1. Defendant's counsel alleges that she was out of town, but attempted to confer with Plaintiffs' counsel upon her return. *Response to Motion to Amend,* at p.3, n.2. The parties are cautioned that the Court takes the duty to confer imposed by D.C.Colo.L.Civ.R. 7.1 very seriously. Rule 7.1A requires "meaningful negotiations" by the parties. *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D.Colo. 2003). It is clear that if the parties had engaged in meaningful negotiations prior to the filing of the instant motion, some of the issues contained therein could have been resolved

2

without the Court's intervention. ***The parties are warned that a failure to comply with Rule 7.1A in the future will result in summary denial of any motion.***

In their Motion to Amend the Scheduling Order, Plaintiffs argue that good cause exists to allow the depositions of "Dr. London and other individuals with knowledge or information regarding the breathing circuit malfunction, the existence of a core record and Dr. Sandoval's participation in the intubation." *Motion to Amend*, p. 4. Defendant filed a Response [Docket No. 309; filed November 27, 2007] and Plaintiffs filed a Reply [Docket No. 321; filed November 30, 2007].

Numerous courts have noted, and I agree, that a "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *See, e.g.,Washington v. Arapahoe County Dept. Of Social Services*, 197 F.R.D. 439, 441 (D.Colo. 2000) (citations omitted). Pursuant to Fed.R.Civ.P. 16(b), a deadline set in a Scheduling Order may be modified only upon a showing of good cause. Good cause has been interpreted to mean that "scheduling deadlines cannot be met despite a party's diligent efforts. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Jorgenson v. Montgomery*, 2007 WL 3119549, *3 (D.Colo. 2007) (quoting *Dilmar Oil Co., Inc. v. Federated Mutual Ins. Co.*, 986 F.Supp 959, 980 (D.S.C. 1997)).

### A.     Deposition of Dr. London

Dr. Martin London is an anesthesiologist who performed an independent outside peer review analysis of Mr. Bethel's case on behalf of Defendant. The Court ordered

Defendant to disclose the report prepared by Dr. London by Order dated October 19, 2007 [Docket No. 283]. Plaintiffs request that they be allowed to depose Dr. London, on the grounds that "Plaintiffs' only method of discovering what happened before and during surgery is to question Dr. London and anyone who had knowledge of the existence of a core record, mechanical malfunctions and Dr. Sandoval's participation." *Motion to Amend*, p. 5 (emphasis in original). Plaintiff argues that good cause exists to amend the Scheduling Order, as it was not until after Defendant's October disclosures that Plaintiff learned that Dr. London may posses key information regarding events that transpired during the surgery. *Id.* at p. 4. In response, Defendant states it has no objection to amending the Scheduling Order to permit deposition of Dr. London, "as [he] has evidence directly bearing on one of the crucial issues in this matter . . . ." *Defendant's Response*, p. 3. Accordingly, I find that the parties have demonstrated good cause to amend the Scheduling Order to permit the deposition of Dr. London.

**B.     Other Individuals**

Plaintiffs further request that the Scheduling Order be modified to allow for deposition of "individuals with information about the existence of a core record, the mechanical malfunction and Dr. Sandoval's role." Plaintiffs also request that "the Court order Defendant to immediately disclose these individuals pursuant to Fed. R. Civ. P. 26(e)." The relief sought by Plaintiff is not appropriately brought in a Motion to Amend the Scheduling Order and is addressed, in part, in the Court's Order regarding Plaintiff's Motion to Compel below. For the reasons set forth below, Plaintiffs' request that the

4

Scheduling Order be amended to permit depositions of as-yet unnamed individuals with knowledge or information about a core record and Dr. Sandoval's role is **DENIED.** Plaintiffs' request that the Scheduling Order be amended to permit depositions of as-yet unnamed individuals with knowledge of the "mechanical malfunction" is **DENIED without prejudice.**

Accordingly, IT IS HEREBY ORDERED that **Plaintiffs' Motion to Amend Scheduling Order and for Leave to Depose Martin London, M.D. and As-Yet Unidentified Witnesses** [Docket No. 293; filed November 9, 2007] is **GRANTED in part** and **DENIED in part.** The Scheduling Order is hereby amended to permit the deposition of Dr. London. The remainder of Plaintiff's Motion is denied as set forth above.

### III. Motion to Compel

Plaintiffs' Motion to Compel [Docket No. 296] requests that the Court enter an order compelling the production of "the core record; all documentation of the investigation into the breathing circuit malfunction; a disclosure of all individuals with knowledge of the breathing circuit failure; and documents 174, 188 and 196-205 from Defendant's supplemental privilege log." *Motion to Compel*, p. 8. Plaintiffs argue that these documents and individuals have information relevant to key facts at issue, that no valid privilege exists to prevent disclosure of documents pre-dating October 6, 2003, and that Defendant has waived its attorney-client privilege and work-product privilege with respect to documents sent to a third party. *Motion to Compel*, p. 8. In its Response [Docket No. 323], Defendant

5

argues that "Plaintiffs seek documents which do not exist, documents which are clearly protected by privilege, and even documents for which they have no valid reason to challenge the asserted privilege." *Response to Motion to Compel*, p. 2.

### A. Core Record[1]

A cardiac or respiratory emergency record ("core record") is a hospital record kept during the time of resuscitation from a cardiac or respiratory emergency. *See Motion to Compel*, p. 2. Plaintiffs claim that a core record would contain information regarding the timing and identity of the treatments and medications provided to Mr. Bethel, his response thereto, and the identity of each person involved therein. *Id.* Plaintiffs also allege that a core record usually contains information about the patient's vital signs and the time when the patient was resuscitated. *Id.* Plaintiffs contend that any information contained in a core record from the event at issue would be "critical to a determination of the timing of Mr. Bethel's brain injury." *Id.* at p. 3.

Defendant states that it cannot produce a core record, as one was never made during Mr. Bethel's surgery. *Defendant's Response to Motion to Compel*, p. 2. However, Plaintiffs argue that on October 4, 2007, Defendant produced a Memorandum explicitly referencing a core record sheet for Mr. Bethel's September 10, 2003 surgery. *Motion to Compel*, Ex. 3, p. 3. The Memorandum at issue is a report dated September 23, 2003, created following an inquiry into the events surrounding Mr. Bethel's surgery. *Id.* The

---

[1] The document that Plaintiffs seek is alternately referred to as a "core record," "COR record" and a "code record." *See, e.g., Defendant's Response to Motion to Compel*, p. 2; *Defendant's Response to Motion to Amend*, Ex. D.

6

authors of the report are Thomas Whitehill, M.D., Chief of Surgical Services, and Lyle Kirson, D.D.S., Chief of Anesthesiology. The sole reference to a core record contained in the Memorandum is as follows: "To have a full accounting of all drugs administered, please see the core record sheet." *Motion to Compel*, Ex. 3, p. 3, ¶ 2. Plaintiffs contend that Defendant has failed to explain this reference to a core record. *Plaintiffs' Reply in Support of Motion to Compel*, p. 2.

Defendant states that it questioned the persons present in the operating room at the time of the incident, and those persons stated that a core record was not created. *Response to Motion to Compel*, p. 2; *Response to Motion to Amend*, p. 5. Defendant cites to the affidavit of Chief of Anesthesiology Dr. Kirson and the deposition of Tina Nelson, R.N., to support its position that no core record was created for Mr. Bethel's surgery. *Response to Motion to Amend*, Ex. 4, Ex. 9. Ms. Nelson, a nurse present in the operating room at the time of Mr. Bethel's surgery, stated in her December 31, 2006 deposition, "[t]here is no code record . . . Things happened too fast. It never got filled out." *Response to Motion to Amend*, Ex. 4, p. 2.

Lyle Kirson, DDS, Chief of Anesthesiology at the Denver Veterans Affairs Medical Center, states in his affidavit that he was the primary author of the September 23, 2003 Memorandum attached by Plaintiffs as Exhibit 3. *Response to Motion to Amend*, Ex. 9, p. 1. Dr. Kirson states, "[i]n the section of the report entitled 'Sequence of Events Following Cardiac Arrest,' I wrote '[t]o have a full accounting of all drugs administered, please see the core record sheet.' I made that statement based on the assumption that a

7

Cardiac/Respiratory Arrest Record or COR sheet had been prepared. I had the understanding that a COR sheet would be prepared by nurses at any time that a code occurred in the hospital." *Id.* at p. 2. Dr. Kirson next states that he did not review or attempt to locate a core record for Mr. Bethel prior to preparing his September 23, 2003 report, as it would not have been relevant. *Id.* Dr. Kirson finally states, "[s]ince the time of writing this report, I personally looked through all of the COR records to see if one existed for Mr. Bethel. I did not find one." *Id.* at p. 3.

The Court cannot compel Defendant to produce a document that does not exist. The Court accepts the statements made in the deposition of Tina Nelson, R.N., and in the affidavit of Dr. Kirson, that a core record was never made for Mr. Bethel's September 10, 2003 surgery. Further, the Court accepts defense counsels' statements, as officers of the Court, that Defendant "cannot produce a document which upon good faith belief and diligent search does not exist." *Response to Motion to Amend*, p. 5. Accordingly, IT IS HEREBY **ORDERED** that Plaintiffs' Motion to Compel production of a core record is **DENIED**.

    **B.    Documents and Individuals with Knowledge of a Breathing Circuit Malfunction**

Plaintiffs seek production of documents related to Defendant's investigation into an alleged mechanical malfunction that may have occurred during Mr. Bethel's surgery as well as disclosure of individuals with knowledge of this alleged investigation. *Motion to Compel*, p. 6. The investigation at issue is referred to in a February 17, 2004 letter from

Ed Thorsland, Jr., director of Eastern Colorado Health Care System for the Department of Veterans Affairs, to Dr. London. *Motion to Compel*, Ex. 4. The letter requests that Dr. London provide a comprehensive peer review of Mr. Bethel's record and asks that he address certain specific questions. At issue is question six (6), in which Dr. London is asked to address the following: "In our investigation, it was discovered that the alarm on the breathing circuit, which indicates a [sic] increased pressure, was not functioning. Is there any evidence to support the possibility that the mechanical failure of this anesthesia equipment contributed to the hypoxic event?" *Id.* at p. 1. Plaintiffs argue that any information relating to a mechanical malfunction that may have occurred during Mr. Bethel's surgery is critical to the investigation of the case.

Defendant responds that Plaintiffs already have acquired the information that they currently seek. *Response to Motion to Compel*, p. 3. Defendant argues that Plaintiffs have already deposed the majority of the people present in the operating room on September 10, 2003, that documents relating to the anesthesia machines were produced to Plaintiffs in February of 2007, and that Defendant has produced the maintenance records, operational manuals, and purchase orders for the anesthesia machine at issue. *Id.* Defendant also argues that Plaintiffs can inquire into Dr. London's report during his deposition. *Response to Motion to Amend*, p. 6. In their Reply, Plaintiffs contend that the witnesses deposed by Plaintiffs denied that any equipment malfunction occurred during the September 10, 2003 incident. Plaintiffs argue that "Defendant's Response ignores the fact that it investigated the breathing circuit malfunction but refuses to produce that

9

information." *Plaintiff's Reply In Support of Motion to Compel*, p. 2. Finally, Plaintiffs argue that while Defendant has produced generic information regarding the type of anesthesia machine used, it still has not produced documents regarding its investigation into the breathing circuit malfunction. *Id.* at 2-3. Defendant does not appear to deny that it conducted an investigation into an alleged breathing circuit malfunction. Nor does Defendant deny that it has failed to produce documents relating thereto.

Fed. R. Civ. P. 26(b) permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). *See also Williams v. Board of County Commissioners*, 192 F.R.D. 698, 702 (D. Kan. 2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense). I note that Plaintiffs do not point to a properly propounded Interrogatory or Request for Production of Documents seeking the information requested in this part of their Motion to Compel. Instead, they point to letters addressed to defense counsel dated October 5, 2007 and October 29, 2007. *Plaintiffs' Motion to Compel,* Exs. 1 and 2. Those letters generally reference "Defendant's obligations under Rule 26." I find that documents relating to Defendant's investigation into a breathing circuit malfunction are relevant to Plaintiffs' claims of medical negligence and should have been included in Defendant's disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(B) and/or (e). Accordingly, IT IS HEREBY **ORDERED** that Defendant shall produce all documents relating to Defendant's investigation into the

mechanical malfunction occurring during Mr. Bethel's surgery, and identify individuals with knowledge of this investigation, within **twenty (20) days** of the date of this Order.

### C. Documents Prepared Before October 6, 2003

Plaintiffs seek to compel production of documents 174 and 188 listed in Defendant's supplemental privilege log. *Motion to Compel*, p. 6.

#### 1. Document 174

Plaintiff has submitted one version of Defendant's privilege log, dated October 25, 2007. *See Motion to Compel*, Ex. 7. In this privilege log, document 174 is identified as "Daily Case Reviews," it is undated and the author is listed as "unknown." *Motion to Compel*, Ex. 7, p. 29. Without further explanation, Defendant submits that document 174 is a "risk management document" that was created September 23, 2007. *Response to Motion to Compel*, p. 4. Defendant does not explain why a document titled "Daily Case Reviews" is actually a risk management document, when other risk management documents are clearly identified as such on Defendant's privilege log. Nor does Defendant explain why document 174 is identified as "undated," if the actual date of the document is September 23, 2007. Defendant alleges that document 174 is privileged pursuant to 38 U.S.C. § 5705, as an "Adverse Event and Close Call Reporting" document, or part of a quality assurance activity. *Id.* Defendant has submitted a partial privilege log in the instant proceedings. *See Response to Motion to Compel*, Ex. B. However, this privilege log only lists documents 195 through 205. As such, it does not assist the Court in determining the actual date and subject matter of document 174.

### 2. Document 188

Document 188 is identified on Defendant's supplemental privilege log as "Risk Management Meeting Minutes" and is dated September 23, 2003. *Motion to Compel*, Ex. 7, p. 31. The author of document 188 is Marilyn Lynn, Patient Safety/Risk Manager. *Id.* Plaintiffs argue that document 188 is a "document created by Defendant's risk manager prior to the establishment of the root cause analysis team," and is discoverable for that reason. *Reply in Support of Motion to Compel*, p. 3. Defendant alleges that document 188 was prepared on October 24, 2003, and should be protected as a follow-up to an Adverse Event Close Call Reporting document, also privileged pursuant to 38 U.S.C. § 5705. *Response to Motion to Compel*, p. 4. Defendant does not identify the author of document 188. Defendant purports to submit a redacted version of document 188, attached as Exhibit A to its Response to the Motion to Compel. Defendant states that Exhibit A lists the date of the incident as September 11, 2003, and the date of the document as October 24, 2003. *Response to Motion to Compel*, p.5; Ex. A. As Plaintiffs point out, "It is unclear what Exhibit A references. It does not correspond to the description of Document 188 contained in Defendant's Privilege Log, and there is no identifying information within Exhibit A to demonstrate what it is." *Reply in Support of Motion to Compel*, p. 3, footnote 1.

As far as the Court can discern from this confusing record, Plaintiffs have met their burden of proving that documents 174 and 188 are discoverable. Defendant has completely failed to show otherwise, and in fact has muddied the record considerably on

this issue.  Accordingly, IT IS HEREBY **ORDERED** that Plaintiffs' Motion to Compel production of documents 174 and 188 is **GRANTED.**

    D.    **Documents 196-205**

Plaintiffs argue that Defendant transmitted documents 196-205 to Mr. Bethel's Vocational Rehabilitation File and to Mr. Bethel's healthcare providers, thus waiving the attorney-client and work-product privileges.  *Motion to Compel*, p. 6; *Reply in Support of Motion to Compel*, p. 4.  Defendant argues that "Plaintiffs make no assertion that the persons listed in the privilege log are not either counsel to the Defendant or employees or agents of the Defendant."  *Response to the Motion to Compel*, p. 5.  Therefore, Defendant argues that Plaintiffs have failed to establish waiver of the relevant privileges.  *Id.*

Where a party makes a claim that a document is protected from discovery based on privilege, the court must determine whether federal or state law governs the existence of the claimed privilege.  *Atteberry v. Longmont United Hospital*, 221 F.R.D. 644, 646 (D.Colo. 2004).  In cases like this one, brought under the Federal Tort Claims Act, federal common law  governs the application of privilege.  *See, e.g., Beller ex rel. Beller v. United States*, 221 F.R.D. 679, 681 (D.N.M. 2003); Syposs *v. United States*, 179 F.R.D. 406, 411 (W.D.N.Y. 1998).

Fed. R. Civ. P. 26(b) permits discovery "regarding any matter, *not privileged*, that is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R.

13

Civ. P. 26(b)(1) (emphasis added). By excluding "privileged" information from the broad parameters of pre-trial discovery, Rule 26 attempts to strike a balance between conflicting interests. Privileges further the administration of justice and "should not be set aside lightly." *Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002). *See also McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991) ("protections of the work-product privilege are important and should not be set aside lightly"). However, privileges also have the effect of withholding relevant information from the finder of fact, and for that reason should be narrowly construed. *Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 225 (D.D.C. 1995). The Supreme Court has "warned that testimonial privileges 'are not lightly created nor expansively construed, for they are in derogation of the search for truth.' " *In re Grand Jury Subpoena*, 397 F.3d 964, 984 (D.C. Cir. 2005) (Henderson, J., concurring) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974).

The party resisting discovery on grounds of privilege bears the burden of coming forward with facts that would sustain the claimed privilege. *See Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 373 (D. Colo. 1993) ("[t]he burden of proving the attorney-client privilege rests on the party raising that privilege"). The party withholding information on the basis of privilege must make a clear showing that the asserted privilege applies and must establish all elements of the privilege. *National Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994). *See also* Fed. R. Civ. P. 26(b)(5) (the party claiming privilege must present sufficient information to permit the

14

opposing party to assess the applicability of the privilege).

### 1. Attorney-Client Privilege

The parameters of the attorney-client privilege are well-established. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (noting that the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law"). The attorney-client privilege protects communications between a client and an attorney, made in order to obtain or deliver legal assistance, that were intended by the participants to be confidential. *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998); *see also Cavallaro v. United States,* 284 F.3d 236, 245 (1st Cir. 2002) (identifying the essential elements of the attorney-client privilege). Generally, disclosing attorney-client communications to a third party results in a waiver of the attorney-client privilege. *See In re: M & L Business Machine Co., Inc.*, 161 B.R. 689, 693 (D. Colo. 1993) ("Generally, the attorney-client privilege is lost if the substance of the confidential communication is disclosed to a third party, even inadvertently"); *Sedillos v. Board of Education of School Dist. No. 1*, 313 F. Supp. 2d 1091, 1093 (D. Colo. 2004) ("the attorney-client privilege can be waived by {a]ny voluntary disclosure by the client' of an otherwise privileged confidential communication") (citations omitted). However, the presence of a third party will not destroy the attorney-client privilege if the third party is the attorney's or client's agent or possesses commonality of interest with the client. *See, e.g., Weatherford v. Bursey*, 429 U.S. 545, 554 (1977) (finding that attorney-client communications in the presence of a third party not the agent of either are generally not protected by privilege); *In re Grand Jury*

15

*Investigation*, 918 F.2d 374, 386 (3rd Cir. 1990). An agency like the Department of Veterans Affairs and its lawyers may have the requisite relationship such that their communications are protected by the attorney-client privilege. *Lacefield v. U.S.*, 1993 WL 268392, *3 (D.Colo. 1993) (citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C.Cir. 1980)). However, the "*sine qua non* for invocation of the privilege is that the communications in question were intended to be confidential." *Gottlieb v. Wiles*, 143 F.R.D. 241, 249 (D.Colo. 1992) (citing *United States v. Rockwell Int'l.*, 897 F.2d 1255, 1265 (3rd Cir. 1990)). For this reason, "[t]he burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure." *Lacefield*, 1993 WL 268392 at *3 (quoting *Coastal States*, 617 F.2d at 863).

Plaintiffs argue that Defendant has admitted that it transmitted documents 196 through 205 to "Mr. Bethel's Vocational Rehabilitation File at the VA's Regional Office" and to "Mr. Bethel's healthcare providers who were employed by the VA." *Motion to Compel*, p. 6; *Reply in Support of Motion to Compel*, p. 7. The heart of Plaintiffs' argument seems to be that Defendant transmitted these documents to Bruce Coppel, a vocational rehabilitation specialist who has worked with Mr. Bethel. *Reply in Support of Motion to Compel*, p. 4. Plaintiffs state, "[a]s a rehabilitative counselor, Mr. Coppel was acting on behalf of <u>Plaintiffs</u> and owed them a duty of care . . . Transmittal of documents to Mr. Coppel constituted a waiver of the attorney-client and work-product privileges." *Id.* (emphasis in original). I note that Plaintiffs cite no legal authority in support of the blanket

16

assertion that transmittal of otherwise privileged documents to an employee of Defendant constitutes waiver of attorney-client privilege. Defendant states that "[i]t is undisputed that the Defendant in this case is the United States through the Department of Veterans' Affair [sic]. The privilege log notes that Documents 196-205 are emails from the U.S. Attorneys Office, the Office of the General Counsel and employees of the VA in an attempt to obtain and covey [sic] information regarding this litigation." *Response to Motion to Compel*, p. 7; Ex. B. Defendant also notes that documents 196 through 205 are all dated after the inception of the instant litigation and were sent in response to that litigation. *Id.*

Transmittal of these documents from Defendant's counsel to Mr. Coppel, an employee of Defendant, does not necessarily constitute a waiver of the attorney-client privilege. *In re Grand Jury Investigation*, 918 F.2d at 386. Moreover, while it may be true that Mr. Coppel owes Mr. Bethel a duty of care as one of his treating specialists, the existence of such a duty has no impact on the attorney-client privilege that exists between Mr. Coppel, an employee of Defendant, and Defendant's attorneys. As Defendant has listed these documents on its privilege log, and as the communications were made in an attempt to convey or gain information related to the pending litigation, I find that Defendant has demonstrated that the communications in question were intended to be confidential. Accordingly, I find that Defendant has not waived the attorney-client privilege regarding documents 196-205. Because the documents are protected from disclosure by the attorney-client privilege, it is not necessary to address Plaintiffs' argument that Defendant waived the work-product privilege with respect to the documents. Accordingly, IT IS

HEREBY **ORDERED** that the Motion to Compel production of documents 196-205 is **DENIED**.

Accordingly, **Plaintiffs' Motion to Compel** [Docket No. 296; filed November 9, 2007] is **GRANTED IN PART** and **DENIED IN PART**. Defendant shall produce all documents relating to Defendant's investigation into the mechanical malfunction occurring during Mr. Bethel's surgery, identify individuals with knowledge of this investigation, and produce copies of documents 174 and 188, within **twenty (20) days** of the date of this Order. The remainder of Plaintiffs' Motion to Compel is **DENIED**.

BY THE COURT:
__s/ Kristen L. Mix_____
United States Magistrate Judge

Dated: January 2, 2008