IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01336-RPM

SHARON BETHEL, Individually and as Conservator and Guardian of
DAVID BETHEL, an incapacitated person,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

FINDINGS, CONCLUSIONS AND ORDER FOR JUDGMENT

---

    David Bethel's life was transformed as a result of the global hypoxic ischemic injury to his brain caused by negligence in the performance of services by the medical personnel assigned to treat him as a surgical patient at the Denver Veterans Affairs Medical Center on September 10, 2003, as determined in the Findings and Conclusions entered in this civil action on November 28, 2008.  He was a happily married father of four children, employed as a furniture truck driver, athletically skilled, 40-year-old African American man enjoying an active lifestyle.

    Now, he has such severe limitations that he has lost his identity as an autonomous person, lacking the ability to manage the activities of daily living.  He is totally dependent upon others for his survival and that dependence will continue for the remainder of his life.  Sharon Bethel, his wife for 26 years, quit work as a home care provider for elderly persons to care for David in their home after he was discharged from

Craig Hospital in January, 2004. She described him as acting at the developmental level of a two-year-old child.

David Bethel's impairments include movement disorders of myoclonic jerks, tremors and ataxia. He has no short term memory. He has difficulty with visualizing spatial concepts and relationships making it difficult for him to adapt to changes in his environment. The executive function of his brain is impaired making it difficult for him to initiate speech and to control impulsivity. He has sleep apnea. He has developed Type II diabetes, requiring insulin injections and a well-controlled diet.

The Veterans Administration (VA) has provided medical services and paid for his care at Craig Hospital in Denver and Memorial hospital in Colorado Springs. The VA has also paid for some consultations by medical specialists outside of VA staff.

There is no disagreement that Mr. Bethel's treatment and care require a multi-disciplinary approach. One of the most difficult aspects of his care is maintaining an appropriate balance of the medications required for his treatment. Coordination among the doctors and therapists working with him is of paramount importance. That requires a case manager with sufficient knowledge and skills to advocate for him and communicate with providers of the required services.

The VA has relied on Sharon Bethel to fill that role. The government's contention is that because all of the services Mr. Bethel needs now and in the future can be met by the VA directly or through providers paid for by the VA under 38 U.S.C. § 1710(a)(2)(c), no further damages should be awarded for future medical care. That would be true in the case of a predictable course of future treatment for a clearly defined medical problem such as prosthetic care for an amputee. This case is uniquely complex both as

2

to the variety of services needed and the importance of monitoring with preventive care to protect this man's health and safety.

The VA model of health care is not adequate for David Bethel. It is designed for responsive treatment of symptoms. Access to care is through the gateway of a primary care physician assigned to the patient. If that doctor perceives a need for referral to a specialist or for special diagnostic testing, she must submit a request to be reviewed by a staff chief who then determines whether it is medically appropriate. The veteran may appeal a denial for a further clinical review. If the primary care physician refuses to request a service or test, there is no available recourse.

Mr. Bethel's primary physician since September, 2004, is a family practice doctor in the VA Community Based Outpatient Clinic in Colorado Springs. She has seen Mr. Bethel, accompanied by Sharon, at six-month intervals and as necessary in response to complaints.

This level of care is not adequate for this patient. An illustration of the failure of the VA to provide comprehensive care is the doctor's response to counsel's questions concerning her failure to refer this patient for a cardiology consult despite the high risk known to be associated with diabetes. She said there had been no complaints of symptoms of cardiovascular disease and she thought that the diabetes was under control based on lab results from testing at six-month intervals. Similarly, the doctor has not made any referrals for physical or occupational therapy because neither David Bethel nor his wife have made a request for any therapy. The primary care physician never examined Mr. Bethel's medical records showing the brain damage Mr. Bethel sustained and does not demonstrate an adequate appreciation of his needs. She sees

3

no need for psychiatric or psychological services because this patient was always happy and joking with her during his infrequent visits to her office.  She lacks enough information about this man to make informed medical judgments concerning his needs.

The VA system is simply not structured to provide the comprehensive care that is required for the catastrophic consequences of the damage done to Mr. Bethel's brain.  The government quibbles about whether the diabetes was caused by the hypoxic injury.  That is not a relevant concern.  The fact is that this patient developed diabetes since his injury and because of that injury he does not have the capacity to control his diet or medications by himself, just as he does not have the capacity to self manage any other aspect of his life.

The plaintiff has shown by more than a preponderance of the evidence that the defendant must fund a life care plan for David Bethel as the appropriate remedy for the harm caused by the VA's negligence.  Sharon Bethel and the Bethel children have no legal responsibility for contributing their services.  Mrs. Bethel is undecided about her future.  The children want to live independently.  The plan must be based on the assumption that family care will not be an available substitute for any portion of what is required for providing for the health, safety and enjoyment of some quality of life in the time that David Bethel may reasonably be expected to live. Given the statistical tables of life expectancy for a man of his age and the probabilities of the occurrence of adverse health effects, that time is reasonably expected to be twenty-nine years. Helen Woodard, an experienced life care planner, prepared a life care plan for David Bethel detailing what is reasonably believed to be necessary for future medical care and assistance with daily living to enable him to live independently in a single residence

without requiring the family to provide services.  That plan, Exhibit 114, was discussed at length in the testimony of the relevant witnesses during the trial.

Upon review in the context of that testimony and all of the evidence admitted, Ms. Woodard's basic assumptions appear to be reasonable.  First, the requirement of 24-hour supervision by someone is well supported in the record.  Mr. Bethel has interrupted sleep, gets up to urinate, presenting a danger of falling given his motor function impairments and his tendency toward disorientation.  The level of skill and training required for those providing care will be different during the times of the day and will increase with advancing age.  At present, that may be at the level of an aide for most of the day and night but it may ultimately require full-time nursing care, at least at the licensed public nurse (LPN) skill level.  Nursing visits are now needed daily for injecting insulin, monitoring medications and checking glucose readings.

A second basic assumption is the importance of case management and advocacy to coordinate the activities of those attending Mr. Bethel daily and to communicate with the many medical specialists required to evaluate and treat the multiple physical, mental and emotional impairments affecting this patient.  Ms. Woodard's estimate of the cost of this service is low, considering the testimony of those who attended Mr. Bethel at Craig Hospital and Dr. Colliton who did an independent medical evaluation in 2007.  Dr. Colliton emphasized that coordination of the multi-disciplinary approach necessary in this case requires that the case manager be a registered nurse or an experienced social worker devoting much more time to Mr. Bethel's case than Ms. Woodard included.

It is neither necessary nor within this Court's competence to approve or disapprove the particular components of a life care plan. The primary question is whether the necessary care can be provided in a group home as the government contends. Such a setting is no doubt appropriate for many special needs cases, and, presumably at a lesser cost. The evidence is clear that it is not appropriate for David Bethel. He does not do well in any interaction with others. His clearly expressed anger at the VA for ruining his life and his lack of impulsivity control presents a danger of acting out in such a setting.

The amount of an award for future medical and other health care expenses can be expressed in a lump sum under Colorado law. It is not disputed that this case is outside of the presumptive limitation of $1M under Colorado law. The government contends that the total damage award is limited to the $10M in the administrative claim made under 28 U.S.C. § 2675(b).

The claim form, dated October 12, 2004, is for a total of $10,000,000. A letter from plaintiffs' counsel, dated November 15, 2004, providing additional information requested by the VA, increases the total damages claimed to $10,710,700. Defendant's Exhibit H-006. The plaintiff contends that an increased amount may be awarded under the statutory exceptions for newly discovered evidence not reasonably discoverable at the time of presenting the claim or upon allegation and proof of intervening facts relating to the amount of the claim.

The claim included an economic appraisal of loss prepared by Dr. Patricia C. Pacey, Ph.D, dated October 7, 2004 based, in part, on a preliminary report and life care plan authored by Helen Woodard. As indicated in counsel's letter accompanying the

6

claim, the family support then being provided was expected to continue. Now, over four years later, it is apparent that with the children leaving home and the stress on the marriage from dealing with all of the impairments that have become manifest during this time, the computation of damages should exclude any services from Ms. Bethel, whether or not she continues living with her husband.

Dr. Pacey's appraisal of past loss included $32,900 for essential home services provided by Mrs. Bethel, based on area wage rates for such activities. The life care plan prepared by Mrs. Woodard and the economic loss appraisal presented at trial assumed the need for payment for such services by appropriate providers. The passage of time has also demonstrated that any hoped for improvements in Mr. Bethel's condition have not happened. The nature and extent of the organic damage and its effects have become more clear. In addition, it was not reasonable to assume when the claim was made that it would take more than four years and the stress of aggressive litigation by the government to resolve this claim.

The evidence received at trial supports an award of damages greater than the administrative claim. The parties agree to non-economic damages in the amount of $300,000, the maximum allowable under C.R.S. § 13-69-302(1)(b), (c). They have also stipulated that past lost wages amount to $155,200.00 and a future wage loss of $516,300.00 before a set-off required by 38 U.S.C. § 1151(b) for compensation paid pursuant to 38 U.S.C. § § 1151 and 1114, apparently $228,795.47. All past medical expenses have been provided or paid for by the VA. The dispute concerns the amount necessary to pay for future medical care and other health care expenses for the remainder of Mr. Bethel's life. Dr. Pacey testified the present value of that amount is

7

more than $13,000,000.00 based on Ms. Woodard's life care plan and a life expectancy of 33.9 years. Considering this Court's finding of a life expectancy of twenty-nine years and some adjustment of the life care plan provided, a reasonable estimate of this element of damages is $12,000,000. Accordingly, the total of the damages proven is $12,971,500.

Upon review of case authority, particularly the extensive analysis found in *Reilly v. United States,* 863 F.2D 149, 170-173, (1st Cir. 1988), the legal conclusion is that the plaintiff's total damages is limited to the $10,710,700.00 claimed in the November 15, 2004, letter modifying the claim form.

The government contends that C.R.S. § 13-64-102 requires that awards for future damages must be paid by periodic payments and suggests that it pay a lump sum into some financial institution for payments to be made monthly for Mr. Bethel's care and support in an amount to be determined by the Court. The plaintiff contends that under C.R.S. § 13-64-205(1)(f) and § 13-81-101(2), Sharon Bethel, as court-appointed guardian and conservator of David Bethel's property, may elect payment of a lump sum for future damages and she has filed that election. The defendant moved to strike that election, contending that it is permitted only upon a finding of incapacity to fund periodic payments as provided in § 13-64-205(1)(e). There is no controlling Colorado authority on this question of Colorado statutory interpretation. It is a reasonable interpretation to conclude that subsection (e) does not impose a condition precedent to such an election. If the government's contention is correct, an election is dependent upon a finding that in this case the forms of funding authorized by § 13-64-

207 are not available. That finding is warranted by the fact that the government's proposal is not an appropriate form of funding.

The apparent legislative purpose of the Colorado statute is that the money paid shall be used for the intended purposes and not dissipated leaving the tort victim dependent upon public services.

Ms. Bethel was appointed by the District Count in El Paso County under the Colorado Probate Code. That court is the appropriate authority to supervise the protection and distribution of the funds paid in satisfaction of the judgment to be entered, presumably through a trust approved by that court.

Upon the foregoing, the Court finds and concludes that the plaintiff shall have and recover damages in the amount of $10,710,700.00. Because of the special circumstances of this case and the entitlement to an offset, the plaintiff's counsel shall prepare the form of judgment to be approved as to form only by counsel for the government and submit it to the Court on or before March 20, 2009.

SO ORDERED.

Dated: March 13th, 2009

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge