IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 05-cv-01336-RPM

SHARON BETHEL, Individually and as Conservator and Guardian of
DAVID BETHEL, an incapacitated person,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,

      Defendant.
_____

FINDINGS, CONCLUSIONS AND ORDER ON REMAND
_____

On September 17, 2008, an order entered determining that the United States had

vicarious liability for the treatment of David Bethel at the Veterans Affairs Medical

Center in Denver, Colorado, (VAMC) by the physicians and medical staff assigned to

his care, including anesthesiologist, Dr. Robin Slover, an employee of the University of

Colorado Health Services Center.  That ruling was reversed upon appeal from the Final

Judgment entered on March 20, 2009, after trial.  The appellate court ruled that

because Dr. Slover was not an employee of the VAMC, the government could not be

responsible for any negligent treatment by her under the Federal Tort Claims Act, 28

U.S.C. § 2671, *et seq.*

Anticipating that result, at the trial the government contended that any negligence

in the care of Mr. Bethel causing his catastrophic injury was that of Dr. Slover.  In the

unpublished decision of the Court of Appeals entered as an Order and Judgment on

February 1, 2012, the author, Circuit Judge Terrence L. O'Brien, noted that despite this

Court's vicarious liability ruling, the government admitted Slover's negligence, as

follows:

> Prior to Judge Matsch's ruling holding the government vicariously liable for Slover's alleged negligence, the government argued Slover's negligence caused David's injury. Even after Judge Matsch's ruling and in obvious disagreement with it, the government continued to "admit" Slover "breached the standard of care required for medical practitioners in the field of anesthesiology and that such conduct was the direct and proximate cause of the injury to David Bethel." (Appellant's Appx. at 233.) It said the following actions constituted a breach of the standard of care:

> Slover failed to adequately assess [David's] condition after returning to the operating room, and she proceeded with a rapid sequence induction without first ensuring [his] airway could be secured safely.

*Bethel v. United States,* No. 09-1219, 2012 U.S. App. LEXIS 7637,(10th Cir. Feb. 1,

2012) (unpublished), slip opinion, footnote 15.

The order and mandate remanded the case to this court, with instructions to

apportion fault under Colorado law, C.R.S. § 13-21-111.5 "between Slover and the

federal government employees (Kirson and McDermott)." *Id.* at p. 24.[1]

Colo.Rev.Stat. § 13-21-111.5 provides in relevant part:

> (1) In an action brought as a result of . . . an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, . . . damages, or loss . . . . (2) . . . [T]he court shall make special findings determining the percentage of negligence or fault attributable to each of the parties and any persons not parties to the action . . . to whom some negligence or fault is found and determining the total amount of damages sustained by each claimant. The entry of judgment shall be made by the court based on the special findings . . . .

---

[1]The slip opinion refers to the "captain of the ship" doctrine and the Sudden Emergency Doctrine as matters to be addressed on remand.  The former is not applicable to an anesthesiologist under Colorado law and if it were it would be relevant only for the time before Dr. Kirson took over management of Mr. Bethel's care.  The Sudden Emergency Doctrine may be relevant if the issue were the amount of fault attributed to Dr. Kirson.

> (3)(a) . . . [T]he finder of fact . . . may consider the degree or percentage of negligence or fault of a person not a party to the action, *based upon evidence thereof*, which shall be admissible, in determining the degree or percentage of negligence or fault of those persons who are parties to such action . . . .
>
> (Emphasis added).

The defendant in this case is the United States of America, owner and operator of the VAMC.  Dr. Slover is a person not a party to the action and is therefore considered as a designated non-party.  Dr. Kirson and Dr. McDermott are not the only VAMC employees who participated in the care of David Bethel, a patient of the hospital. They include Shirley Pfister, Dr. Sandoval, Dr. Baumgartner, the pharmacy technician, Tom Price and Dr. Chae.

The government has the burden of proving by a preponderance of the evidence that (1) Dr. Slover was negligent, (2) that her negligence was a cause of David Bethel's injury and (3) the percentage of her negligence compared to that of all of the participating employees of the VAMC.

Stated simply, the issue now to be decided is the extent to which the government can avoid liability for negligent treatment of this veteran patient by assigning an employee of an independent contractor to participate in his care.

After remand the government requested that the record be reopened to permit the taking of additional evidence.  That request was denied and the court suggested that the proposed additional evidence be submitted as an evidentiary proffer which was filed on Aril 26, 2012, with a brief on the Captain of the Ship doctrine.  The plaintiff filed a response on May 11, 2012.

The proffer summarizes proposed testimony from Lyle Kirson, D.D.S., the chief

of anesthesiology service at VAMC, expressing opinions concerning the failure of Dr. Slover to meet the standard of care and the time when Mr. Bethel suffered brain damage.  That testimony would not be admissible under F.R.E. 702 and Colorado law. Dr. Slover is a licensed physician.  Dr. Kirson is not.  He is a dentist.  C.R.S. § 13-64-401 provides that no person shall be qualified to testify as an expert witness in a medical malpractice action against a physician who is not himself a licensed physician. Whatever Dr. Kirson may believe about Dr. Slover's conduct under his assumptions about facts which are disputed, he has no qualifications to express medical opinions about the timing of the brain injury to Mr. Bethel.

The proffer includes proposed additional testimony from Nicole McDermott, M.D., a first-year, first quarter resident expressing her opinions about her role compared to that of Dr. Slover and the deficiencies in Dr. Slover's conduct.  Dr. McDermott testified at the trial as a fact witness and the proffer includes testimony that would be repetitive. To the extent that the proposed testimony includes new information concerning the laryngeal mask airway device ("LMA") which she says was available but not unwrapped, lubricated and tested to be ready for use, that testimony is not helpful.   Dr. Kirson declined use of it because of his assessment of the patient's condition while attempting ventilation with an oxygen mask and jaw thrust.  Dr. McDermott's opinions concerning Dr. Slover would not be persuasive given her lack of experience and the confusing situation in the operating room in which Dr. McDermott was an active participant.

The government also asks consideration of some opinions given by James Futrell, M.D., in a discovery deposition taken on May 10, 2007.  He had been designated as a plaintiff's expert witness and that designation was withdrawn on

4

October 9, 2007.  The testimony was on cross-examination by defendant's counsel on hypothetical questions and without a full development of his views by plaintiff's counsel. He was not asked to focus on the question now before this Court–what percentage of fault should be assigned to Dr. Slover's conduct in causing David Bethel's injuries?

Under the mandate, the evidentiary record must be analyzed as if the government had designated Dr. Slover as a designated nonparty at fault, an affirmative defense requiring proof that Dr. Slover was negligent and that her negligence contributed to David Bethel's injuries by an extent that can be measured as a percentage of the total injuries caused by the defendant and Dr. Slover.

Nothing that is contained in the appellate opinion or the post mandate briefing changes anything in this Court's Findings and Conclusions entered on November 28, 2008.  Accordingly, these are now incorporated in their entirety.

There was negligence in Dr. Slover's proceeding with a rapid sequence induction without an adequate assessment of the causes of the patient's condition when she returned to the operating room.  Dr. McDermott shares in it by failing to clearly communicate what had happened while Dr. Slover was out of the room. How much did Dr. Slover's decision contribute to the global hypoxic ischemic injury to David Bethel's brain?  There is no clear path to an answer because no one knows when that injury occurred during the events that followed.

The most plausible explanation for the initiating cause of the events leading to Mr. Bethel's injuries is that he was given the wrong medication at or about the time he was placed on the operating bed.  The defendant did not prove by a preponderance of

the evidence that Dr. Slover made that error.  It is therefore chargeable to the government.

Dr. McDermott attempted intubation of the patient unsuccessfully and Dr. Slover's attempt also failed.

When nurse Tina Nelson reported a loss of pulse and Dr. Slover asked for help, the nurse initiated an emergency code response by all available staff who could help. Dr. Kirson took control at a time approximately one minute later.  There is no code record of the times of the events that followed.  Dr. Kirson did not follow the algorithm applicable to the "can't intubate/can't ventilate" situation.  Dr. Chae arrived approximately ten minutes after the loss of pulse.  There was both a heart beat and oxygen saturation at that time.  The mask was removed while Dr. Chae attempted to place a guidewire for retrograde endotracheal intubation, which failed.  He proceeded with a tracheostomy.  The trach tube was inserted ten to fifteen minutes from the insertion of the guidewire.

To hold Dr. Slover responsible for the global hypoxic ischemic brain injury the government had to prove that there was inadequate blood flow and delivery of oxygen to the patient's brain before Dr. Kirson took charge.  The defendant failed to make that showing.

There was a failure to make contemporaneous records of the events and most significantly the monitoring machines were turned off by some person inappropriately so there is no machine record as to when the oxygen levels fell and when cardiac arrest happened.  There is some indication that the anesthesia machine failed to function

6

effectively.  This lack of information was a systemic failure of the institution.  It was not Dr. Slover's fault.

It is not required of this court that fault be found and apportioned among all of the persons participating in the care of David Bethel.  What is required is a finding as to how much of this injury was caused by Dr. Slover's decision to proceed with rapid sequence intubation.  That decision was in part induced by what Dr. McDermott did or did not communicate about what had happened when Dr. Slover was not present.  Dr. Baumgartner was also present during that interval.  He too could have enabled Dr. Slover to evaluate the patient's problem by giving her his observations as to what happened during her absence.

In the Findings, Conclusions and Order for Judgment, entered on March 13, 2009, this Court found that the total proven damages was $12,971,500 but recovery was limited to the amount of the administrative claim, $10,710,700.  The percentage of fault attributed to Dr. Slover should apply to the $12,971,500 figure.  If the fault of the non-party is not greater than 17%, the amount of the cap under 28 U.S.C. § 2675(b) would be the measure of the recovery as it was in the order of March 13, 2009.  Given the complexity of this case, the complicity of the VAMC employees, and the absence of records, that is a just result in this case which has been so long delayed in reaching a final conclusion.

Accordingly, the specific finding required by the Colorado statute is that Dr. Slover was negligent in proceeding with an attempt at a rapid sequence intubation of David Bethel and that her negligence is apportioned at 17% of the cause of his injuries. Applying that percentage to the total damages of $12,971,500. makes the defendant

United States liable for $10,766,345 which are reduced to $10,710,700.  The government is entitled to an offset of monthly payments made to Mr. Bethel under 38 U.S.C. § 1151(b).  The amount of the final judgment now to be entered cannot be determined without that information.  It is

ORDERED, that counsel for the parties shall submit an agreed amount to be awarded in the judgment on or before August 20, 2012, or file their respective computations if there is no agreement.

DATED: July 17th, 2012

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior Judge